UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| Grady Brinkley, | ) | CASE NO. 4:06 CV 0110 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| Marc Houk, Warden, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the Court upon Petitioner Grady Brinkley's Motion to Alter or Amend Judgment Under Rule 59(e). (ECF 139).  Respondent Marc Houk filed a Memorandum in Opposition on February 14, 2012. (ECF 144).  For the following reasons, Petitioner's Motion is granted in part and denied in part.

I.      **Background**

On November 22, 2006, Brinkley filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, raising twenty-eight grounds for relief.  (ECF 15).  In his Eleventh Ground for Relief, Brinkley argued trial counsel were ineffective during the sentencing phase of the trial because they failed to (a) conduct a thorough mitigation investigation; (b) obtain and utilize the expert services of a trained mitigation specialist; (c) properly prepare witnesses for their mitigation testimony; and (d) effectively use a psychologist or psychiatrist during mitigation (hereinafter "sub-

claims 11(a) - (d)"). In his Twelfth Ground for Relief, Brinkley maintained his appellate counsel were ineffective for, among other things, raising on direct appeal any issues or claims that, because the claims were dependent on evidence outside the trial court's record, should have been presented in the post-conviction review process and not in direct appeal (hereinafter "sub-claim 12(e)").

Respondent filed his Return on January 22, 2007. (ECF 47). With respect to Ground 11, Respondent acknowledged Brinkley had raised sub-claim 11(a) on direct appeal and, therefore, this sub-claim was "properly preserved for federal review." (ECF 47 at 66). As for sub-claims 11(b) - (d), Respondent noted they had been raised during post-conviction; the trial court had rejected them on both the merits and on *res judicata* grounds; and the appellate court had rejected these claims solely on the basis of *res judicata*. Respondent did not expressly argue, however, that sub-claims 11(b) - (d) were procedurally defaulted, and proceeded to address them on the merits. (ECF 47 at 66- 72). With respect to Ground 12(e), Respondent maintained this ineffective assistance of appellate counsel claim had not been presented to the state courts and, thus, was procedurally defaulted. (ECF 47 at 72).

Both parties subsequently sought and obtained discovery regarding a variety of claims, including Brinkley's ineffective assistance of counsel during mitigation and ineffective assistance of appellate counsel claims. (ECF 68, 96). In addition, on December 28, 2009, this Court issued an Opinion & Order granting Brinkley's request to expand the record to include documents and deposition testimony relating to these claims, including the depositions of his trial counsel, appellate counsel, and several experts who had been consulted by defense counsel as part of either the trial or post-conviction proceedings. (ECF 135). The Court denied, however, Brinkley's motion for an evidentiary hearing. (ECF 135).

2

On December 5, 2011, this Court issued a lengthy Memorandum of Opinion & Order denying Brinkley's Petition. (ECF 137).  With respect to Ground 11, the Court determined that sub-claim 11(a) (i.e. failure to conduct a thorough mitigation investigation) had been raised on direct appeal and was preserved for federal habeas review.  The Court went on to find the Ohio Supreme Court's resolution of this claim on direct appeal constituted an "adjudication on the merits" and, thus, 28 U.S.C. § 2254(d) was applicable.  In light of the Supreme Court's recent decision in *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011), this Court then found that the additional evidence allowed through expansion of the record could not be used to determine whether Brinkley's defense counsel were ineffective in failing to thoroughly investigate and present mitigating evidence. (ECF 137 at 75). The Court concluded that the state court decision denying this claim was not contrary to or an unreasonable application of clearly established federal law.

With respect to sub-claims 11(b) - (d), the Court found these sub-claims to be procedurally defaulted. (ECF 137 at 71). It then considered them on the merits and rejected them. (ECF 137 at 78- 82). The Court rejected Ground 12(e) on the merits as well. (ECF 137 at 86-87).

Brinkley subsequently filed his Motion to Alter or Amend Judgment on January 1, 2012. (ECF 137).  Therein, Brinkley argues that (1) Sub-claim 11(a) was not "adjudicated on the merits" and, thus, *Pinholster* was not applicable and this Court should have considered the expanded record; (2) this Court should not have applied procedural default to sub-claims 11(b) - (d) because (a) Respondent waived procedural default as to these claims and (b) there are no "legitimate grounds" for enforcing a default; and (3) Ground 12 is not procedurally defaulted and should be deemed to excuse any alleged default of sub-claims 11(b) - (d).  On the basis of these arguments, Brinkley maintains this Court should grant the writ or, alternatively, stay the proceedings and hold

them in abeyance to allow him to present his "new evidence" in state court. In the event the Court

declines to do so, Brinkley argues it should expand the Certificate of Appealability to include sub-

claims 11(b) - (d) and sub-claim 12(e).

## II.    Standard of Review

Brinkley filed his Motion to Alter or Amend pursuant to Rule 59(e) of the Federal Rules of

Civil Procedure. Rule 59(e) allows district courts to alter, amend, or vacate a prior judgment.[1] *See*

Fed. R. Civ. Proc. 59(e); *Huff v. Metropolitan Life Insur. Co.*, 675 F.2d 119, 122 (6th Cir. 1982).

The purpose of Rule 59(e) is "to allow the district court to correct its own errors, sparing the parties

and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*,

533 F.3d 472, 475 (6th Cir. 2008) (quoting *York v. Tate*, 858 F.2d 322, 326 (6th Cir. 1988)). It

permits district courts to amend judgments where there is: "(1) a clear error of law; (2) newly

discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest

injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). *See also Gencorp, Inc. v.

American International Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999); *Culver v. CCL Label, Inc*.,

2012 WL 75439 at * 5 (6th Cir. Jan. 10, 2012).

The Sixth Circuit has explained that "Rule 59(e) motions cannot be used to present new

arguments that could have been raised prior to judgment." *Howard*, 533 F.3d at 475. *See also

Roger Miller Music, Inc. v.  Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007); *Sault Ste.

Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1988). Indeed, "Rule 59(e)

allows for reconsideration; it does not permit parties to effectively 're-argue a case.'" *Howard*, 533

---

[1]    The federal civil rules apply in habeas cases "to the extent that they are not inconsistent with
any statutory provisions or [the habeas rules] . . . " *See* Rule 12 of the Rules Governing Section
2254 Cases.

F.3d at 475 (quoting *Sault Ste. Marie Tribe*, 146 F.3d at 374). The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court. *Huff*, 675 F.2d at 122; 11 C. Wright & A. Miller, Federal Practice and Procedure § 2810 -1, at 124 (2d ed. 1995).

**III.    Analysis**

    **A.    Sub-Claim 11(a)**: **IAC for failure to conduct mitigation investigation**

Brinkley argues this Court made a clear error of law when it determined that the Ohio Supreme Court adjudicated sub-claim 11(a) on the merits for purposes of § 2254(d). Citing *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008), Brinkley maintains the Ohio Supreme Court's consideration of this claim on direct appeal failed to take into account critical evidence that was *de hors* the record and presented during post-conviction proceedings. Without this critical evidence, Brinkley argues, the Ohio Supreme Court could not have fully adjudicated his claim on the merits for purposes of § 2254(d). Brinkley also argues that, because the state appellate court disposed of this claim on *res judicata* grounds during post-conviction, the merits of the claim were left "unresolved" and there is likewise no "adjudication on the merits" by the state post-conviction courts for purposes of § 2254(d). Brinkley asserts that, in the absence of an "adjudication on the merits" by the state courts, Section 2254(d) does not apply and this Court should have considered the expanded record and found that defense counsel were ineffective for failing to conduct a thorough mitigation investigation.

In *Brown*, the Sixth Circuit held that the "deferential standard of review" set out in § 2254(d) "applies only to a claim that has been adjudicated on the merits in State court proceedings." *Brown*, 551 F.3d at 428. The panel concluded that "whenever new, substantial evidence supporting a habeas claim comes to light during the proceedings in federal district court," we must apply the

5

"pre-AEDPA standard of review: *de novo* for questions of law (including mixed questions of law and fact), and clear error for questions of fact." *Id.* at 429.  In that case, the Court found that petitioner's ineffective assistance of counsel claim should be reviewed under the pre-AEDPA standard of review because the state court did not have counseling records from the victim's therapist which could have provided additional grounds for impeaching  the victim's testimony. Noting that petitioner was not at fault for failing to obtain the records during post-conviction proceedings, the court found that "the absence of the counseling records before the [state court]. . . ., combined with that court's explicit statement that its review was 'limited to mistakes apparent on the record,' means that there is no relevant state court adjudication to which this court can defer."  *Id*. at 429-30.  Applying the pre-AEDPA standard of review, the court concluded that petitioner had demonstrated both deficient performance and prejudice and was, thus, denied effective assistance of counsel.

Brinkley argues this Court made a clear error of law in failing to apply *Brown* because the Ohio Supreme Court denied his ineffective assistance of counsel claim based entirely on the trial court record and did not have before it critical evidence presented during post-conviction.[2]  This evidence includes the Affidavit of Robert Smith, a clinical psychologist retained during post-conviction proceedings to prepare a psychological/chemical dependency assessment of Brinkley. In his Affidavit, Dr. Smith concludes that Brinkley suffered from childhood trauma, a narcissistic personality disorder, and alcohol/cocaine dependence. He further opines that these conditions were sufficient to "significantly impair Brinkley's perception and behavior at the time of the offenses."

---

[2]    Brinkley does not argue in his Motion to Alter or Amend that *Brown* is applicable because the Ohio Supreme Court did not have before it evidence obtained during these federal habeas proceedings.

6

(Apx. Vol. 9 at 132-141). Brinkley's post-conviction evidence also included the Affidavit of Douglas Smith, a forensic psychiatrist retained by defense counsel in preparation for mitigation. Dr. Douglas Smith avers he received little guidance or information from defense counsel, was not permitted to fully examine Brinkley or explore Brinkley's substance abuse problems, and was not called to testify during mitigation. (Apx. Vol. 9 at 129-131). Finally, Brinkley presented post-conviction affidavits from several members of his family, including his mother Alberta Brinkley, his aunt Wilzena Thompson, and his cousin Quince Brinkley, Jr. These affidavits provide greater detail regarding Brinkley's upbringing and childhood, and suggest defense counsel failed to thoroughly prepare for mitigation. (Apx. Vol. 9 at 142-146, 155-157, 158-161).[3]

Brinkley maintains this evidence was essential to the consideration of his ineffective assistance of counsel claim and that, without it, the Ohio Supreme Court's decision does not constitute an "adjudication on the merits" for purposes of § 2254(d). Because there was no state court "adjudication on the merits," Brinkley argues, this Court should conduct a *de novo* review of this sub-claim and take into consideration both the evidence submitted during post-conviction and the "new evidence" obtained during these federal habeas proceedings.

The Court rejects this argument. While *Brown* might have been relevant to Brinkley's claim at one time, the Sixth Circuit recently remarked that "the Supreme Court's recent decision in *Cullen v. Pinholster*, 131 S.Ct. 1388 (2011) raises serious questions about *Brown*'s continuing vitality." *McCoy v. Jones*, 2012 WL 593117 at *3 (6th Cir. Feb. 24, 2012). In *Pinholster*, the Supreme Court

---

[3]     Additionally, Brinkley presented affidavits from a mitigation specialist and two attorneys, none of whom represented Brinkley during his mitigation hearing. *See* Affidavits of Dorian Hall, Jeffrey Helmick, and Jeffrey Gamso (Apx. Vol. 9 at 121-28, 151-52, 153-54). These Affidavits suggested defense counsel did not thoroughly prepare for the mitigation hearing.

held that federal habeas review of a claim adjudicated on the merits by a state court "is limited to the record that was before the state court." *Pinholster*, 131 S.Ct. at 1398. Noting that "review under §2254(d)(1) focuses on what a state court knew and did," the Supreme Court remarked that "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court." *Id*. at 1399. "[H]olding that evidence introduced in federal court has no bearing on § 2254(d)(1) review," the Supreme Court made clear that, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of §2254(d)(1) on the record that was before the state court." *Id*. at 1400.

While the Sixth Circuit has not yet fully considered the effect of *Pinholster* on the *Brown* decision,[4] it recently indicated that there are "serious questions" about whether *Brown* is consistent with *Pinholster*. *See McCoy*, 2012 WL 593117 at * 3. Indeed, Brinkley's argument that "new evidence" (i.e. evidence not before the state court that adjudicated this claim on the merits) may be considered to determine whether the state court in fact adjudicated the claim on the merits seems circuitous given the principles underlying the *Pinholster* decision. *Pinholster*, 131 S.Ct. at 1399. In light of this uncertainty, this Court cannot say it was "clear error" under Rule 59(e) to find that the Ohio Supreme Court's resolution of this claim constituted an "adjudication on the merits." This Court granted Brinkley a Certificate of Appealability on this sub-claim and his argument on this

---

[4]    *See Walsh v. Lafler*, 2011 WL 5041418 at ** 4 (6th Cir. Oct. 25, 2011) (noting that "[t]his Circuit has not yet had occasion to consider the effect of *Pinholster*" on *Brown* but  that it need not reach this issue because even under the less deferential, pre-AEDPA standard, Welsh had not presented grounds for habeas relief); *Robinson v. Howes*, 663 F.3d 819, 823 (6th Cir. 2011)(assuming, without deciding, that petitioner's ineffective assistance claim was subject to the less deferential, pre-AEPDA standard of review where the state court did not have key records before it).

issue is best addressed on appeal.

Brinkley next argues that, even if there has been an "adjudication on the merits" of this sub-claim, the Ohio state courts' rejection of this claim was contrary to or involved an unreasonable application of clearly established federal law and/or was an unreasonable determination of the facts pursuant to §§ 2254(d)(1) and/or (2).  Having satisfied § 2254(d), Brinkley argues this Court may then consider the evidence from the expanded record in determining whether he is entitled to habeas relief.

After reciting the legal standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the Ohio Supreme Court's discussed Brinkley's ineffective assistance of counsel during mitigation claim as follows:

> Nor can counsel be faulted for not presenting additional mitigating evidence, since the record does not disclose that such evidence was available.  *Cf. State v. Coleman* (1999), 85 Ohio St.3d 129, 138, 707 N.E.2d 476.  The record establishes that counsel fully inquired into Brinkley's background and consulted appropriate experts.
>
> Finally, Brinkley has failed to disclose how he was prejudiced by counsel's performance. Thus, we find no "reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."  *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. We reject proposition XIV.

*State v. Brinkley*, 105 Ohio St.3d 231, 251 (2005).

The Court has already determined that the Ohio Supreme Court's adjudication of this sub-claim was not contrary to or an unreasonable application of clearly established federal law. As set forth in this Court's December 5, 2011 Opinion, the state court record reflects that defense counsel did prepare for mitigation. Counsel traveled to Chicago and interviewed  Brinkley's family, including Brinkley's mother, sister, and three aunts.  (Tr. at 1990-91).  During mitigation, he elicited testimony from these witnesses regarding Brinkley's childhood and upbringing.

Specifically, Brinkley's mother, Alberta, testified during mitigation that (1) she was only 14 years old when Brinkley was born; (2) Brinkley's father was murdered when Brinkley was 7 years old; (3) Brinkley was raised in the projects and ran away often; and (4) she was physically abused by her second husband, Tom Rollins, and that Brinkley witnessed this abuse. (Tr. 2046-57). She also testified that she loved her son and hoped that he would be spared. (Tr. at 2057). Brinkley's sister and two aunts also provided some details about his upbringing and testified that they loved Brinkley. (Tr. 2040-45, 2060-2067).

The state court was also aware that defense counsel consulted several experts, including a psychologist and a forensic psychiatrist. (Tr. at 2017, Apx. Vol. 257, 272, 401). In fact, prior to the beginning of the mitigation hearing, the trial court expressly confirmed on the record that defense counsel had consulted two experts; that these experts had examined Brinkley; and that counsel had nonetheless decided not to raise the issue that Brinkley was either incompetent or suffering from a severe mental disease or defect. (Tr. at 2018-19). From this information, the Ohio Supreme Court could have reasonably concluded that defense counsel had a strategic reason for failing to call these experts.[5]

Based on the above, and considering the highly deferential standard of review called for by *Strickland* and § 2254(d), this Court finds it was neither clear error nor a manifest injustice under Rule 59(e) to find that the Ohio Supreme Court's rejection of this claim was neither contrary to nor an unreasonable determination of federal law. *See Harrington v. Richter*, 131 S.Ct. 770, 788 (2011) (finding that "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and

---

[5]  Pursuant to *Williams v. Anderson*, 460 F.3d 789 (6ᵗʰ Cir. 2006), this Court correctly identified the Ohio Supreme Court decision on direct appeal as the appropriate state court decision for habeas review (as opposed to the state trial court's post-conviction decision).

10

when the two apply in tandem, review is doubly so").   However, even if this Court were to accept Brinkley's arguments (either that this claim was not "adjudicated on the merits" or that he had satisfied § 2254(d)) and consider the expanded record as part of a *de novo* review, the Court would nevertheless find sub-claim 11(a) to be without merit.

To succeed on an ineffective assistance of counsel claim, a petitioner must satisfy the familiar two-prong test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must demonstrate that counsel's errors were so egregious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id* at 687. To determine if counsel's performance was "deficient" pursuant to *Strickland*, a reviewing court must find that the representation falls "below an objective standard of reasonableness." *Id.* at 688.  A court considering an ineffective-assistance claim "must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, – U.S. –, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689).

The petitioner also must demonstrate that he or she was prejudiced by counsel's errors.  To do this, a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington,* 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 694).  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id*. (quoting *Strickland*, 466 U.S. at 693).  "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id*. (quoting *Strickland*, 466 U.S. at 687).

11

A reviewing court must strongly presume that counsel's conduct was reasonable and might be part of a trial strategy. *Strickland*, 466 U.S. at 689. "'Judicial scrutiny of a counsel's performance must be highly deferential' and . . . 'every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689). If a petitioner fails to prove either deficiency or prejudice, then the ineffective assistance of counsel claims must fail. *Lundgren v. Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006) (citing *Strickland*, 466 U.S. at 697).

Even if this Court were to review sub-claim 11(a) *de novo* and consider the expanded record, the Court would find defense counsel's performance during mitigation was not deficient under the first prong of *Strickland*. The record reflects defense counsel did not fail to conduct a thorough mitigation investigation. Defense counsel Merle Dech traveled to Chicago to interview Brinkley's family members and visit Brinkley's childhood neighborhood. (Exp. Record, Vol. II, Dech Depo. at 9, 26-29, 93-97)(hereinafter "Dech Depo"). While there, Mr. Dech met for several hours with Brinkley's mother, sister, and two aunts. (Dech Depo. at 26-29, 93-97). He obtained information from them regarding Brinkley's traumatic childhood, including information regarding the death of Brinkley's father and grandmother, his abusive step-father, and the fact that his mother was only 14 years of age when he was born and often absent. (Dech Depo. at 10, 26-28, 93-97). Mr. Dech also spoke with two experts, psychologist Jolie Brams[6] and forensic psychiatrist Douglas

---

[6]    Dr. Brams had been retained by Brinkley's previous defense counsel, Don Cameron and Ron Wingate. (Dech Depo. at 34; Brams Depo. at 11-13). She conducted an initial examination of Brinkley and did not make any firm diagnoses regarding his psychological condition. (Bram Depo. at 114). Dr. Brams recalled that, when Brinkley's new defense counsel Merle Dech and John
(continued...)

Smith. (Dech Depo. at 9, 34-36; Exp. Record. Vol. I, D. Smith Depo. at 6 ; Exp. Record, Vol. IV, Brams Depo. at 22-23)(hereinafter "D. Smith Depo." and "Brams Depo.").  These experts met with Brinkley at the Lucas County jail, obtained  information from him about his childhood and social history, and reviewed records relating to his lengthy criminal background. (D. Smith Depo. at 7; Brams Depo. at 14-15).

However, defense counsel made the conscious decision  not to call either of these experts to testify during mitigation, in part because of counsel's concern that it would have opened the door for the State to cross-examine these witnesses regarding Brinkley's criminal past, which included convictions for armed robbery, theft, and, most significantly, a particularly brutal and savage sexual assault on a 15-year old girl.[7]  (Exp. Record, Volume II, J. Thebes Depo. at 94-99, 125-26).  Indeed, defense counsel were very concerned about the jury becoming aware of this past sexual assault, explaining that opening the door to this testimony would have "give[n] the jury an extra reason to impose the death penalty."  (Dech Depo. at 12; Thebes Depo. at 94-99, 125-26).    Moreover, defense counsel were not convinced that their expert, Doug Smith, would have provided helpful mitigation testimony regarding Brinkley's mental condition. (Dech Depo. at 12-13, 25; Thebes Depo. at 24-25, 32-38, 49-51, 91-93).  Dr. Smith did not find any evidence of any organic brain damage. (D. Smith Depo. at 27-30, 71, 89-90).  Rather, defense counsel recalled that Dr. Smith and

---

[6](...continued)
Thebes contacted her, she advised them that they should retain a forensic psychiatrist to conduct a further evaluation.  (Brams Depo. at 33-34).  Dech and Thebes retained Doug Smith for that purpose.

[7]    The record indicates that, when Brinkley was 15 years old, he sexually assaulted his 15 year- old girlfriend by raping her and inserting a screwdriver into her anus and vagina.  (Dech. Depo. at 91-92). *See also* Exp. Record, Vol. III, E-1, Tab 6 at 612-14.

Dr. Brams emphasized Brinkley's childhood trauma and narcissistic personality disorder as being key elements of his psychological profile.  (Thebes Depo. at 24-25, 32-38, 49-51, 91-93).

Defense counsel felt, based on their experience defending capital trials, that the benefits of introducing expert testimony regarding narcissism would not outweigh the risk of opening the door to testimony to about Brinkley's criminal history.  (Thebes Depo. at 91-96, 125).  Moreover, defense counsel concluded it could elicit the essential elements of Brinkley's childhood trauma through testimony from his family members.  Accordingly, defense counsel made the strategic choice to rely on Brinkley's family members to paint a picture of Brinkley's traumatic childhood and upbringing. (Dech Depo. at 10).  Defense counsel also hoped to elicit sympathy from the jury for Brinkley's family, who testified that they loved him and hoped he would be spared.  (Dech Depo. at 10; Thebes Depo. at 49-50).

Based on the above, and upon review of the expanded record, the Court cannot say defense counsel's performance during mitigation fell below an objective standard of reasonableness. Defense counsel's tactical decision to limit mitigation evidence  to testimony from Brinkley's family members was reasonable in light of (1) the significant risk that jurors would learn of Brinkley's past criminal history and (2) their conclusion that expert testimony regarding childhood trauma and narcissism would be of limited value.  Given the brutal details of Brinkley's past sexual assault, it is understandable that defense counsel would make the difficult choice to rely on family and forego calling psychological experts.

The Court also finds Brinkley has not demonstrated prejudice.  Brinkley contends he was prejudiced by defense counsel's failure to obtain school, medical and psychological records and provide these records to Douglas Smith.  However, there is no indication what these records would

have shown or how they would have been helpful.[8]  Moreover, Brinkley has failed to show he was prejudiced by defense counsel's failure to introduce expert testimony.  Brinkley argues his post-conviction expert, Robert Smith, would have testified that Brinkley suffered from childhood trauma, narcissistic personality disorder, and chemical dependency.  However, the evidence relied upon by Robert Smith in reaching his diagnosis of childhood trauma was elicited by defense counsel during mitigation through the testimony of Brinkley's family members.  Moreover, as set forth above, defense counsel were aware that Brinkley suffered from narcissistic personality disorder but determined that narcissism was not a diagnosis that would be helpful to explore during mitigation.  While it might have been valuable for defense counsel to present expert evidence regarding Brinkley's substance abuse and dependency, the Court cannot say Brinkley was prejudiced by the failure to introduce this evidence in light of the risk that doing so would have opened the door to cross-examination regarding his past sexual assault.

Accordingly, the Court finds that, even if it were to conduct a *de novo* review and consider the expanded record, it would find Brinkley's sub-claim 11(a) to be without merit.  Brinkley's Motion to Alter or Amend regarding this sub-claim is, thus, denied.

---

[8]     During discovery in these federal habeas proceedings, Brinkley questioned defense counsel regarding their failure to obtain a "Consultative Examination Report" by a Dr. Mark Amdur regarding Brinkley. (hereinafter "Amdur Report") (Exp. Record, Vol. III, Tab E-2).  Respondent objected strenuously to this report on the grounds that it was hearsay , not properly authenticated, and had not been presented during state court proceedings.  Even if this Court were to consider it, the Amdur Report is of limited utility.  It appears to be a brief, one-time psychological evaluation performed as part of Brinkley's Social Security disability evaluation. While Dr. Amdur indicates in this report that Brinkley may have an "organic brain disorder," he later apparently explained to Brinkley's post-conviction expert, Robert Smith, that he "wasn't sure" whether Brinkley, in fact, had an organic mental disorder. (Exp. Record, Vol. I, R. Smith Depo. at 88, 108-09).  Neither of Brinkley's experts, Dr. Doug Smith and Dr. Robert Smith, diagnosed  Brinkley with an organic brain disorder. (R.Smith Depo. at 93; D. Smith Depo. at  27-30, 71, 89-90).

**B.**    **Sub-claims 11(b) - (d): IAC for failure to obtain and utilize the expert services of a mitigation specialist, properly prepare witnesses for their mitigation testimony, and effectively use a psychologist or psychiatrist during mitigation**.

Brinkley next argues this Court made a clear error of law when it determined that sub-claims 11(b) - (d) were procedurally defaulted.  Specifically, Brinkley argues Respondent waived procedural default as to these sub-claims by failing to raise it as an affirmative defense in his Return.  Moreover, even if this Court were to find that Respondent did not waive procedural default, Brinkley maintains there is no "legitimate grounds" for enforcing a default because these sub-claims were based on evidence *de hors* the record and, thus, Brinkley was required to raise them in post-conviction, as opposed to on direct appeal. He argues, therefore, that the application of *res judicata* to these sub-claims is improper and fails at least three of the *Maupin* factors, which the Sixth Circuit requires be met before a state procedural rule will be permitted to procedurally bar a federal habeas claim.[9]  Consequently, Brinkley argues this Court should find that sub-claims 11(b) - (d) are not procedurally defaulted and, thus, should be reviewed *de novo*.  Brinkley further argues this Court is not barred by *Pinholster* from considering the evidence in the expanded record with respect to these sub-claims and that, on the basis of this evidence, he should be granted habeas relief.

---

[9]    In *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the Sixth Circuit outlined the now familiar test to be followed when the state argues that a habeas claim is defaulted because of a prisoner's failure to observe a state procedural rule.  It is: "[f]irst, the federal court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with that rule.  Second, the federal court must determine whether the state courts actually enforced the state procedural sanction -- that is, whether the state courts actually based their decisions on the procedural rule.  Third, the federal court must decide whether the state procedural rule is an adequate and independent state ground on which the state can rely to foreclose federal review of a federal constitutional claim."  *Williams v. Coyle*, 260 F.3d 684, 693 (6th Cir. 2001) (citing *Maupin*, 785 F.2d at 138) (further citations omitted).

The Court will address each of these arguments in turn.

### 1.    Waiver of Procedural Default

Brinkley argues Respondent waived procedural default as to sub-claims 11(b) - (d) because he did not expressly raise it in his Return.  As set forth above, in his Return, Respondent noted that (1) sub-claims 11(b) - (d)  had been raised during post-conviction; (2) the trial court had rejected them on both the merits and on *res judicata* grounds; (3) and the appellate court had rejected these claims solely on the basis of *res judicata*. Respondent did not expressly argue that sub-claims 11(b) - (d) were procedurally defaulted and proceeded to address these sub-claims on the merits.  (ECF 47 at 66- 72).

In his Traverse, Petitioner pointed out that Respondent had failed to expressly assert procedural default as to sub-claims 11(b) - (d) and, thus, had waived any alleged default of these sub-claims. (ECF 53 at 61).  He then proceeded to argue that, to the extent Respondent's "mere reference" to *res judicata* was construed as an assertion of procedural default, these sub-claims were not procedurally defaulted for a variety of reasons.  Respondent filed a Sur-Reply to Petitioner's Traverse, but did not address Petitioner's assertion regarding waiver and/or procedural default of these sub-claims. (ECF 54).

As a general rule, procedural default is an affirmative defense that must be raised by the State or it will be considered waived.  *See Trest v. Cain*, 522 U.S. 87, 89 (1997); *Gray v. Netherland,* 518 U.S. 152, 166 (1996).  Although federal courts are not required to raise procedural default *sua sponte, see Trest*, 522 U.S. at 89, they are not precluded from raising or recognizing a procedural default despite the fact that it was not raised by the State. *See e.g. White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2005) (noting that it is "permitted to consider the procedural default issue

even when raised for the first time on appeal"); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (finding that federal court "may raise the issue of procedural default *sua sponte*"); *Sheppard v. Bagley*, 604 F.Supp.2d 1003, 1013 (S.D. Ohio 2009) (finding that district court was not precluded from raising procedural default *sua sponte*, particularly where petitioner had been given the opportunity to respond to procedural default issue); *Foti v. Bobby*, 2007 WL 1577785 at * 4 (N.D. Ohio May 31, 2007) (noting that "[w]hen confronted with procedural default not pled by the state, a federal habeas court may, in its discretion, elect *sua sponte* to consider the procedurally defaulted claims on the merits or, alternatively, consider dismissal of the petition, generally after affording the petitioner an opportunity to respond").

As the Sixth Circuit has noted, "[t]he main concern with raising procedural default *sua sponte* is that a petitioner not be disadvantaged without having had an opportunity to respond." *Howard*, 405 F.3d at 476. *See also Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002) (stating the importance of giving petitioner an opportunity to respond, before raising procedural default *sua sponte*). In the instant case, this is not a concern. While Brinkley argued in his Traverse that Respondent waived the procedural default defense, he nevertheless went on to argue, at some length, that sub-claims 11(b) - (d) were not procedurally defaulted. *(ECF 53 at ¶¶ 152-155, incorporating ¶¶ 94-118).* Brinkley, then, had the opportunity to respond to this issue and was not disadvantaged from the Court's application of procedural default with respect to these sub-claims.

Accordingly, even assuming Respondent failed to expressly raise procedural default, it was not "clear error" for this Court to *sua sponte* raise this issue with respect to sub-claims 11(b) - (d).

### 2. Application of Procedural Default

Brinkley next argues there are no "legitimate grounds" for enforcing a default as to these

18

sub-claims.  He maintains that, because these sub-claims were based on evidence *de hors* the record, they were supposed to have been raised during post-conviction rather than direct appeal. Thus, he argues the Ohio post-conviction courts incorrectly determined that he had waived these claims and its application of *res judicata* was improper. He also faults  this Court's reliance on the Sixth Circuit's decision in *Williams v. Anderson*, 460 F.3d 789 (6th Cir. 2006) in finding these sub-claims to be procedurally defaulted, claiming that the *Williams* case has been "implicitly overruled" by the Supreme Court's decision in *Cone v. Bell*, 556 U.S. 449 (2009).

A brief reiteration of the procedural history of Brinkley's ineffective assistance of counsel during the mitigation phase claims is necessary to resolve this issue.  On direct appeal, Brinkley's appellate counsel raised ineffective assistance of counsel in his Fourteenth Proposition of Law. He referred only generally to ineffective assistance during the mitigation phase, arguing  that "[a]side from calling some family members during the mitigation phase, defense counsel did nothing else to present meaningful mitigation evidence" (Apx. Vol. 5 at 112) and that defense counsel "clearly did not" conduct a full mitigation investigation (Apx. Vol. 5 at 70).  This argument was based entirely on the trial court record.

While this claim was still pending before the Ohio Supreme Court, Brinkley filed his Petition for Post-Conviction Relief. Therein, Brinkley argued ineffective assistance of counsel during mitigation in more detail, claiming specifically that defense counsel were ineffective for failing to (1) utilize a mitigation specialist (Sixth Ground for Relief; Apx. Vol. 11 at 82-84); (2) investigate, prepare and present mitigation evidence (Seventh Ground for Relief; Apx. Vol. 11 at 84-87); (3) prepare mitigation witnesses (Eighth Ground for Relief, Apx. Vol. 11 at 87- 90); and (4) retain and present sufficient expert assistance (Ninth Ground for Relief, Apx. Vol. 11 at 90- 93).

19

Brinkley supported his petition with evidence *de hors* the record, including affidavits from several family members, a forensic psychiatrist, a clinical psychologist, and a mitigation specialist.

The state trial court denied Brinkley's Petition on February 11, 2004, and rejected his ineffective assistance during mitigation claim as follows:

> Petitioner's sixth, seventh, eighth, ninth and tenth propositions of law allege ineffective assistance of counsel with respect to the mitigation phase. Specifically, petitioner contends that his counsel were ineffective for failing to investigate his background, employ the services of a mitigation specialist, and prepare the witnesses who did testify. He further contends that his counsel were ineffective in failing to present testimony from additional family members and a psychological expert. Petitioner supports his claims with affidavits of additional family members and experts who state that they would have testified on petitioner's behalf had they been contacted.
>
> "[T]he decision of what mitigating evidence to present during the penalty phase of a capital trial is generally a matter of trial strategy." *State v. Issa* (Dec. 21, 2001), Hamilton App. No. C-000793, 2001-Ohio-3910, citing *State v. Keith* (1997), 79 Ohio St.3d 514, 530, 684 N.E.2d 47, 63. Failure to call all potential mitigation witnesses does not amount to ineffective assistance of counsel. *State v. Esparza* (May 29, 1992), Lucas App. No. L-90-235. Further, "the existence of alternative or additional mitigation theories does not establish ineffective assistance of counsel." *State v. Yarborough* (April 30, 2001), Shelby App. No. 17-2000-10, 2001 Ohio 2351, citing *State v. Combs* (1994), 100 Ohio App.3d 90, 105.
>
> In the affidavits submitted by petitioner, the affiants primarily make statements regarding petitioners background including his upbringing, the tragic loss of his grandmother, neglect, and substance abuse. All of this information is largely cumulative to what was testified to by petitioner's mother, sister, and aunts during the trial. **For this reason, and because ineffective assistance of counsel during the mitigation phase of a capital trial can, and has been, raised on direct appeal**, petitioner's sixth, seventh, eighth, ninth and tenth propositions of law will be dismissed.

(Apx. Vol. 10 at 282-83)(emphasis added).

On October 22, 2004, the state appellate court affirmed the decision of the trial court with respect to this issue, stating that "[t]he claims raised by appellant that are pending before the Ohio Supreme Court cannot be litigated in a petition for postconviction relief because said claims are

20

barred by the doctrine of *res judicata*." (Apx. Vol. 11 at 420). That court did not expressly state which claims it believed were barred by *res judicata*. However, it did not address Brinkley's ineffective assistance claims on the merits, which suggests the state appellate court determined that they were among those claims pending before the Ohio Supreme Court on direct appeal.

Both of these post-conviction decisions were issued prior to the Ohio Supreme Court's April 2005 decision on direct appeal. It appears the state post-conviction courts believed that Brinkley had, in fact, raised on direct appeal the same ineffective assistance during mitigation claims that were raised during post-conviction. Thus, the post-conviction courts appeared to find, not that Brinkley could have but did not raise these sub-claims on direct appeal, but that he had in fact already raised them and that they were actively pending before the Ohio Supreme Court on direct appeal. Accordingly, this Court determined that the Ohio post-conviction courts applied *res judicata* based on the rule in Ohio that "[i]f a defendant chooses to bring an ineffective assistance of counsel claim on direct review, . . . Ohio's "res judicata" rule precludes the defendant from re-raising the [same] claim in post-conviction proceedings." *Williams*, 460 F.3d at 799 (quoting *State v. Cooperrider*, 4 Ohio St.3d 226, 448 N.E.2d 452, 454 (1983)). This was a correct finding, given that the state post-conviction courts believed Brinkley had, in fact, already raised these same claims on direct appeal.

However, it does raise some question as to whether the state post-conviction courts correctly applied *res judicata* in light of the fact that these particular sub-claims relied on evidence *de hors* the record and Brinkley arguably did not expressly raise them on direct appeal. *See e.g. White v. Mitchell*, 431 F.3d 517, 526-27 (6th Cir. 2005) (finding that ineffective assistance of counsel claim was not procedurally defaulted because petitioner had raised it during post-conviction based on

21

evidence *de hors* the record); *Hill v. Mitchell*, 400 F.3d 308, 314 (6th Cir. 2005) (same); *Richey v. Bradshaw*, 498 F.3d 344, 359-60 (6th Cir. 2007)(same); *Byrd v. Collins*, 209 F.3d 486, 521 (6th Cir. 2000) (stating that Ohio's *res judicata* rule "has been consistently interpreted to stand for the proposition that a claim of ineffective assistance of trial counsel, which is dependent upon evidence outside the record, is to be raised in a post-conviction proceeding rather than on direct appeal").

Even if this Court were to find, however, that these sub-claims were not procedurally defaulted and consider them *de novo*, it would nevertheless find that Brinkley had failed to demonstrate both deficient performance and prejudice under *Strickland* for the reasons set forth in Section III.A of this Opinion.  Specifically, the Court finds Brinkley has failed to demonstrate that defense counsel were ineffective for failing to obtain a mitigation specialist.  Brinkley argues a mitigation specialist was necessary to obtain additional records and assist psychologist expert Doug Smith in conducting his evaluation.  However, as discussed previously, Brinkley does not indicate what these additional records would have shown or how they would have been helpful.  Moreover, given that counsel made the strategic decision not to call Dr. Smith due, in part, to the risk that he would be subject to cross-examination regarding Brinkley's criminal past, Brinkley cannot show he was prejudiced by counsel's failure to obtain a mitigation specialist to work with Dr. Smith regarding his evaluation.

The Court also rejects Brinkley's argument that defense counsel failed to adequately prepare his family members for their mitigation testimony.  Defense counsel elicited the key elements of Brinkley's traumatic childhood during mitigation, including that (1) his mother was only 14 years old when he was born and often absent; (2) his father was murdered when he was 7 years old; (3) he was raised in the projects and ran away often; and (4) he witnessed his step-father physically

22

abuse his mother. (Tr. at 2046-57).  The additional information about his upbringing contained in his family's post-conviction affidavits is largely cumulative to the mitigation testimony that was presented to the jury.

Finally, the Court rejects Brinkley's argument that defense counsel failed to effectively use a psychologist or psychiatrist during mitigation. While Brinkley may in hindsight disagree with defense counsel's decision that expert testimony would not benefit him during mitigation, the Court cannot say that counsel's strategic decision not to call any such experts fell below an objective standard of reasonableness. Accordingly, and for the reasons set forth in Section III.A of this Opinion, the Court finds this argument to be without merit.

In light of the above, the Court declines to alter or amend its previous decision that sub-claims 11(b) -(d) are without merit. However, given the fact that these sub-claims are closely related to sub-claim 11(a), the Court will grant Brinkley's request that it expand the Certificate of Appealability to include sub-claims 11(b) - (d).

> **C.    Sub-claim 12(e): Ineffective Assistance of Appellate Counsel for raising on direct appeal any issues or claims that, because the claims were dependent on evidence outside the trial court's record, should have been presented in the post-conviction review process and not in direct appeal.**

Lastly, Brinkley argues this Court erred in finding that his ineffective assistance of appellate counsel ("IAAC") claim as set forth in Ground 12(e) was procedurally defaulted and should deem Ground 12(e) to excuse any alleged default of sub-claims 11(b) - (d).  This Court has already determined, *supra*, that, even if  sub-claims 11(b) - (d) were not procedurally defaulted and were reviewed *de novo* by this Court based on the expanded record, they would be without merit. Accordingly, the Court finds it need not address this issue.

## IV.    Conclusion

Brinkley's Motion to Alter or Amend Judgment under Rule 59(e) (ECF 139) is granted in part and denied in part.  Brinkley's Motion is denied with respect to the merits of sub-claims 11(a)-(d) and Ground 12(e).   The Court grants Brinkley's Motion to the extent it seeks an expansion of the Certificate of Appealability to include sub-claims 11(b) - (d). This Court certifies, pursuant to 28 U.S.C. 1915(a)(3), that an appeal from this decision could be taken in good faith as to grounds 11(a)-(d), and the Court issues a certificate of appealability pursuant to 28 U.S.C. 2253(c) and Fed.R.App.P. 22(b) as to those grounds only.  As to all remaining grounds, the Court certifies, pursuant to 28 U.S.C. 1915(a)(3), that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability.  28 U.S.C. 2253(c); Fed.R.App.P. 22(B0

IT IS SO ORDERED.

Date: 4/30/12

 /s/ John R. Adams
JOHN R. ADAMS
UNITED STATES DISTRICT JUDGE